UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM WEIR,

                              Plaintiff,

            -vs-                                      06-CV-410-JTC

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA,

                              Defendant.

---

This action was commenced by plaintiff William Weir in May 2006 by the filing of a summons with notice in New York State Supreme Court, Erie County. Defendant Guardian Life Insurance Company of America removed the action to this court on the basis of original federal jurisdiction, and plaintiff subsequently filed his complaint (Item 10) setting forth causes of action under the Age Discrimination in Employment Act of 1967 ("ADEA"); 42 U.S.C. § 621, *et seq.*; the New York Human Rights Law, N. Y. Executive Law § 290, *et seq.*; and theories of contract reformation. Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, plaintiff's motion is denied, and defendant's motion is granted.

## **BACKGROUND**

As alleged in his complaint, plaintiff was born on January 19, 1936. He worked for defendant for many years, beginning in May 1965. His last position was held under a "Field Representative Agreement" entered in February 1995, which provided that defendant "hereby contracts with the Field Representative on a full-time basis to . . . solicit

applications for life, health and group insurance" and to perform certain other services for an agreed-upon salary and commissions (Item 10, Ex. A, ¶¶ 1, 4, 5). The Agreement explicitly stated that: "Nothing herein contained shall be construed to create the relation of employer and employee between the Field Representative and the [Guardian]." *Id.*, ¶ 3.

Plaintiff alleges that after developing expertise in executive life insurance benefits through his handling of Guardian's significant clientele in the Western New York area, he became actively involved in addressing insurance issues related to the corporate accountability requirements imposed by the Sarbanes-Oxley Act of 2002. This included review of Guardian policies affected by changes in tax regulations governing "split dollar" life insurance arrangements, which revealed the potential for a significant reduction in plaintiff's income due to the lapse of several policies written for American Precision Industries ("API"). In order to avoid this reduction in his salary, plaintiff elected to terminate the Field Representative Agreement, resign from active status, and enter into retirement status as of June 1, 2004 under a "Special Agreement of Agency" with Alliance Advisory Group, Inc. ("Alliance"), which is one of Guardian's general agencies (*see* Ceresia Decl., Ex. B, Item 32-9). This agreement, which the parties refer to as the "Retired Special Agent Agreement," specifically states that "Guardian . . . is not a party to this Agreement except to the extent of its endorsement." (*Id.*).

Plaintiff alleges that shortly after he made the decision to enter the Retired Special Agent Agreement, he discovered that the API policy lapses responsible for the potential reduction in his salary were based on computer error on the part of Guardian. Plaintiff requested that he be reinstated as an active Field Representative, but Guardian refused. According to Armand de Palo, Guardian's Executive Vice President and Chief Actuary at

the time, the decision not to allow plaintiff to return to active status was based on language in the Field Representative pension plan which provided that since plaintiff was over the age of 65, retired, and collecting a defined pension benefit, Guardian could not stop paying the pension if he returned to active status (*see* Ceresia Decl., Ex. B, Item 32-10; Ex. N at § 3.10, Item 32-17 ("If a Member in receipt of a Pension is restored to service as an Employee on or after his Normal Retirement Date, he shall continue to receive the Pension to which he was entitled prior to his restoration to service.")).

On June 28, 2005, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), claiming that Guardian's refusal to reinstate him to active Field Representative status was because of his age (69), in violation of the ADEA (Item 10, Ex. B). He alleged that the decision not to allow reinstatement was made on August 6, 2004 (*Id.*). In its determination letter dated February 14, 2006, the EEOC dismissed plaintiff's Charge, stating that:

> [T]he evidence obtained by the EEOC shows that you were not employed by Guardian Life Insurance Company . . . as an employee but had a relationship with [Guardian] akin to that of an Independent Contractor. Specifically, "(You were) afforded free rein to solicit application anywhere in (your) territory . . . free to lease and operate (your) own office . . . to set (your) own hours . . . to work at home at (your) pleasure . . . to independently contact potential clients . . . bore the risk of loss from (your) business if (you) did not write enough new business . . . [were] responsible for (your) own expenses . . . could select, hire and pay for (your) own clerical assistance . . . and . . . [were] free to develop (your) own sales techniques subject to compliance with state insurance laws." The business interest that is being served by your association with [Guardian] is yours (or Weir Financial Resources, LLC) and not that of [Guardian].

Ceresia Decl., Ex. I, Item 32-16.

Plaintiff then filed this action, setting forth two causes of action for age discrimination under the ADEA, two causes of action for age discrimination under the New York Human

Rights Law, and two causes of action for reformation of the Retired Special Agent Agreement (*see* Item 10). At the conclusion of discovery, defendant moved for summary judgment , urging dismissal of plaintiff's age discrimination claims for essentially the same reasons given by the EEOC—*i.e.*, that plaintiff was not an employee of Guardian for the purposes of the federal and state age discrimination statutes. Defendant also seeks dismissal of the contract reformation claims for the reason that Guardian is not a party to the Retired Special Agent Agreement between plaintiff and Alliance (*see* Item 32-2).

In response, plaintiff voluntarily discontinued his age discrimination claims and moved for summary judgment on his contract reformation claims. He contends that the evidence obtained through discovery clearly and convincingly establishes that the Retired Special Agent Agreement was premised on a mutual mistake of fact–specifically, Guardian's computer error regarding the split dollar arrangements in the API policies.

For the reasons that follow, plaintiff's summary judgment motion is denied, defendant's summary judgment motion is granted, and the case is dismissed.

## DISCUSSION

I.  **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate when, after discovery, it appears that the nonmoving party cannot prove an element

essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004).

As demonstrated by the following discussion, because the record before the court after discovery conclusively demonstrates that Guardian is not a party to the Retired Special Agent Agreement, plaintiff cannot prove an element essential to his claims for reformation of that agreement, and summary judgment in favor of defendant is appropriate.

## II. Reformation of the Retired Special Agent Agreement

Plaintiff's two remaining causes of action seek reformation of the Retired Special Agent Agreement based on the allegation that both plaintiff and Guardian entered the Agreement based on a mutual mistake of fact or, alternatively, that plaintiff entered the Agreement based upon "intentional misrepresentations" made by Guardian (Item 10, ¶¶ 50-57).

It has long been the law in New York that the court may order the reformation of a written agreement where, "[i]n a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement," or where, "[in] a case of fraud, the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement . . . ." *Chimart Associates v. Paul*, 66 N.Y.2d 570, 573 (1986). To warrant the remedy of contract reformation based on the parties' mutual mistake:

> the minds of the parties must have met in a contract and in the mistake through which it failed of expression. There being no fraud, the policy cannot be reformed if it expressed the intentions of the defendant only. The mistake

> which will permit a court of equity to reform a contract in writing in the absence of fraud must be one made by both parties to the agreement so that the intentions of neither are expressed in it. The mistake or each mistake must be shared in by both parties. The courts cannot compel the defendant, or any party, to enter into or be bound by a contract which it never made.

*Salomon v. North British & Mercantile Ins. Co. of New York*, 215 N.Y. 214, 219 (1915).

Because the remedy of reformation presents the danger "that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract," *Chimart*, 66 N.Y.2d at 573, the courts have required the party seeking reformation on the basis of mutual mistake to come forward with clear and convincing evidence showing "in no uncertain terms, not only that [mutual] mistake . . . exists, but exactly what was really agreed upon between the parties." *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978)); *see also Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002). "This evidentiary requirement operates as a weighty caution upon the minds of all judges, and forbids relief whenever the evidence is loose, equivocal or contradictory." *Pless v. Cleveland Wrecking Co.*, 2005 WL 2811814, at *3 (W.D.N.Y. October 27, 2005) (citing *Backer*, 46 N.Y.2d at 220).

Plaintiff cannot meet this exacting burden of proof. As discussed above, the Retired Special Agent Agreement expressly provides that Guardian is not a party to the agreement. Accordingly, there can be no showing that plaintiff and Guardian "have a real and existing agreement on particular terms and subsequently find themselves signatories to a writing which does not accurately reflect that agreement . . . ." *Harris v. Uhlendorf*, 24 N.Y.2d 463, 467 (1969); *see also Chimart*, 66 N.Y.2d at 573 (court will order reformation only where the proof unequivocally demonstrates that the parties reached an oral agreement but, unknown

to either, the signed writing does not express that agreement). Simply put, since Guardian is not a party to the Retired Special Agent Agreement, there was no meeting of the minds between defendant and plaintiff as to either the terms of the agreement or the mistake through which it failed of expression, and the court is powerless to order its reformation.

While acknowledging this basic fact, plaintiff argues that reformation of the Retired Special Agent Agreement is nonetheless available as a remedy in this case because Guardian determines which of its employees are entitled to Retired Special Agent status, and therefore Guardian acted as an "agent" for both him and Alliance. Plaintiff cites *Hadley v. Clabeau*, 140 Misc.2d 994, 532 N.Y.S.2d 221 (N.Y. Sup. Ct. 1988), *aff'd*, 161 A.D.2d 1141 (4th Dep't 1990), as authority for the proposition that the mistake of an agent for both parties to an agreement is considered a mutual mistake permitting the court to order reformation. In *Hadley*, the attorney representing both the seller and purchaser in a real estate transaction made a mistake in his description of the property in the deed resulting in the parties' execution of a contract that did not accurately reflect their intentions. The court held "that the mistake of the attorney representing both the seller and purchaser in the transaction in issue was a mutual mistake between the parties" which required reformation of the deed. *Hadley*, 140 Misc.2d at 1000, 532 N.Y.S.2d at 225.

In this case, there is nothing in the record before the court to suggest that Guardian's computer error regarding the split dollar arrangements in the API policies was incorporated into, or had any impact whatsoever on plaintiff's status under, the terms and conditions of the Retired Special Agent Agreement between plaintiff and Alliance. Likewise, plaintiff has produced no evidence to convince the court that Guardian functioned

as an agent for plaintiff or Alliance in any other capacity so as to render the computer error a "mutual mistake" for the purpose of plaintiff's reformation claim.

Finally, plaintiff has failed to come forward with clear and convincing evidence of any intentional misrepresentations on the part of Guardian that induced him to enter into the Retired Special Agent Agreement. Accordingly, he cannot establish fraud as a basis for his reformation claim.

Based on this analysis, the court concludes that plaintiff cannot prove an element essential to his claims for reformation of the Retired Special Agent Agreement, and summary judgment in favor of defendant is appropriate dismissing the two remaining causes of action in the complaint.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Item 35) is denied, defendant's motion for summary judgment (Item 32) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 30, 2009
p:\opinions\06-410.mar23.09